**AFFIDAVIT OF DETECTIVE COREY J. ROBINSON**
**IN SUPPORT OF AN APPLICATION FOR SEARCH WARRANTS, CELLULAR**
**TELEPHONE RECORDS, AND A CRIMINAL COMPLAINT**

I, Detective Corey J. Robinson, state:

*INTRODUCTION AND AGENT BACKGROUND*

1.      I am a Police Officer with the Northampton Police Department ("NPD") and have been so employed with that department continuously since 2001. I am currently assigned to the NPD's Detective Bureau and I have served in that capacity since 2008. While at the NPD, I have investigated or participated in numerous criminal investigations, including such offenses as homicides, armed robberies, serious assaults, assault and battery, drug offenses, computer-related crimes, and sexual assaults. While at the NPD, I have also attended trainings on the preparation and execution of search warrants and have participated in the preparation of and execution of numerous search warrants.

2.      I have received specialized training in the investigation of homicides, serious assaults, property crimes, computer-related crimes, narcotics, and crimes against persons. I have also received specialized training in the field of digital evidence, including:

      a.      Law Enforcement & Emergency Services Video Association ("LEVA") Level 1 – Basic Forensic Video Analysis and the Law;

      b.      LEVA Level 2 – Digital Multimedia Evidence Processing;

      c.      LEVA Forensic Imaging Techniques;

      d.      LEVA Photograph/Video Comparison Course;

      e.      High Tech Crime Institute Group's Katana Forensics Lantern iOS First Responder Certification and Katana Forensics Laboratory iOS/Mac OSX

1

Certification;

f.  National White Collar Crime ("NW3C") Cyber-Investigation 205 GPS Interrogation;

g.  NW3C Macintosh Imaging Basics and Introduction to iDevice Forensics;

h.  SEARCH's Core Skills for the Investigation of Cellular Devices;

i.  Federal Law Enforcement Training Center's Mobile Device Investigations Program;

j.  Geocell's Introduction to Cell Phone Investigations; and

k.  Geocell's Advanced Cell Phone Investigation and Mapping of Records.

3.  Since 2008, I have been assigned as the NPD's Internet Crimes Against Children ("ICAC") Task Force Officer. As an ICAC officer, I have attended numerous courses and conferences on the sexual exploitation and abuse of children through the Internet and digital media, including the ICAC's National Conference in Atlanta, GA; several courses explaining the basic function of computer devices, cell phones and networks; and several courses instructing how to properly examine and seize digital devices in a forensically sound manner.

4.  Since 2008, I have participated in many ICAC-related cases, many of which have involved the execution of search warrants and seizure of computers, Internet network devices, cellular phones, and digital storage devices. Additionally, I have also received specialized training, including ICAC Investigator's Training Techniques class taught by the National ICAC Task Force and Peer to Peer Investigation Referral Training taught by members of the Massachusetts ICAC Task Force.

5.  I am currently investigating Stephen Cote ("Cote"), ████████████████ Eric

2

Jenney ("Jenney"), Bruce Singer ("Singer"), and others for committing the following offenses:

    a.    Sexual Exploitation Of Minors in violation of 18 U.S.C. § 2251;

    b.    Receipt/Distribution Of Material Involving The Sexual Exploitation Of Minors in violation of 18 U.S.C. § 2252(a)(2);

    c.    Possession Of Material Involving The Sexual Exploitation Of Minors in violation of 18 U.S.C. § 2252(a)(4)(B);

    d.    Receipt/Distribution Of Child Pornography in violation of 18 U.S.C. § 2252A(a)(2); and

    e.    Possession Of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).

(collectively, the "Subject Offenses").

6.    I submit this affidavit in support of:

    a.    an application for warrants under 18 U.S.C. § 2703(a) and/or Rule 41 of the Federal Rules of Criminal Procedure to search and seize records and data from the following e-mail accounts and cell phones:

    i.    tyrant0807@gmail.com;

    ii.    tyrant072013@gmail.com;

    iii.    tyrant0807@aim.com;

    iv.    An LG GSM LGL39C Optimus Dynamic II with telephone number (413) 271-4075 and MEID 268435461214931706.

    v.    An LG GSM LGL39C Optimus Dynamic II with MEID 268435461213054309.

3

      vi.     A Samsung SGH-T340G (GP) with telephone number (413) 427-4075 and IMEI 355873042240110.

as described in Attachment A (respectively, the "Subject E-Mail Accounts" and the "Subject Cell Phones").

      b.     an application for a Criminal Complaint charging Cote with one count of Receipt Of Material Involving The Sexual Exploitation Of Minors in violation of 18 U.S.C. § 2252(a)(2);

      c.     an application under 18 U.S.C. §§ 2703(c)(1), (c)(2) and (d) directing Verizon Wireless, AT&T Wireless, and TracFone Wireless, Inc. to provide information related to cellular telephone numbers (201) 261-4893 (Verizon Wireless) and (201) 370-7384 (Verizon Wireless) used by Singer, (413) 271-4075 (AT&T Wireless and Verizon Wireless) used by Cote, (413) 519-8078 (Verizon Wireless) used by Jenney, and (413) 562-6526 (TracFone Wireless, Inc. and Verizon Wireless) used by ▮▮▮▮▮

      7.     As set forth below, I have probable cause to believe that the Subject E-Mail Accounts contain evidence, fruits, and instrumentalities of the crimes identified above, as described in Attachment B.

      8.     Based on the e-mail addresses' domain name, I have probable cause to believe that the Subject E-Mail Accounts and relevant data are maintained by the following Internet Service Providers, which, government databases indicate, accepts service of process as described in Attachment A at:

4

    a.        For tyrant0807@gmail.com and tyrant072013@gmail.com:

Custodian of Records

Google, Inc.

1600 Amphitheatre Parkway

Mountain View, CA 94043

Fax: 650-249-3429

    b.        For tyrant0807@aim.com:

AOL

Compliance and Investigation Unit

Legal Department

22000 AOL Way

Dulles, VA 20166-9323

Fax: 703-265-2305

9.     The facts in this affidavit come from my personal observations and review of records, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

### *THE SUBJECT OFFENSES*

10.    Title 18, United States Code, Section 2251(a) provides in pertinent part:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual

5

depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

18 U.S.C. § 2251(a).

11.    Title 18, United States Code, Section 2252(a)(2) provides in pertinent part:

Any person who . . . (2) knowingly receives, or distributes, any visual depiction using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, . . . if—

(A)    the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

(B)    such visual depiction is of such conduct;

. . . shall be punished . . . .

18 U.S.C. § 2252(a)(2).

12.    Title 18, United States Code, Section 2252(a)(4)(B), provides in pertinent part:

Any person who . . . knowingly possesses or knowingly accesses with intent to view 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if—

(i)     the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

(ii)    such visual depiction is of such conduct;

6

. . . shall be punished . . . .

18 U.S.C. § 2252(a)(4)(B).

13.    Title 18, United States Code, Section 2252A(a)(2) provides in pertinent part:

[a]ny person who -

(2) knowingly receives or distributes -

(A) any child pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer; or

(B) any material that contains child pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer;

shall be punished as provided . . . .

18 U.S.C. § 2252A(a)(2).

14.    Title 18, United States Code, Section 2252A(a)(5)(B) provides in pertinent part:

[a]ny person who –

(5)(B) knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer; . . .

shall be punished as provided . . . .

18 U.S.C. § 2252A(a)(5)(B).

15.    The term "computer" as used herein is defined in Title 18, United States Code, Section 1030(e)(1), as:

7

> an electronic, magnetic, optical, electrochemical, or other high
> speed data processing device performing logical, arithmetic, or
> storage functions, and includes any data storage facility or
> communications facility directly related to or operating in
> conjunction with such device, but such term does not include an
> automated typewriter or typesetter, a portable hand held calculator,
> or other similar device.

18 U.S.C. § 1030(e)(1).

16.    Title 18, United States Code, Section 2256(1) defines a "minor" as "any person under the age of eighteen years." 18 U.S.C. § 2256(1).

17.    Title 18, United States Code, Section 2256(2)(A) defines "sexually explicit conduct" as "actual or simulated -- (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2)(A).

18.    Title 18, United States Code, Section 2256(5) provides that "visual depiction" includes "undeveloped film and videotape, data stored on computer disk or by electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format." 18 U.S.C. § 2256(5).

19.    Title 18, United States Code, Section 2256(8) defines "child pornography" in pertinent part:

> [A]ny visual depiction, including any photograph, film, video,
> picture, or computer or computer-generated image or picture,
> whether made or produced by electronic, mechanical, or other
> means, of sexually explicit conduct, where –
>
> (A) the production of such visual depiction involves the use of a
> minor engaging in sexually explicit conduct;

8

(B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or

(C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

18 U.S.C. § 2256(8).

### *PROBABLE CAUSE TO BELIEVE THAT A FEDERAL CRIME WAS COMMITTED*

#### Introduction

20.     In January of 2015, Easthampton Police Department ("EPD") Det. Sgt. Mark Popielarczyk and I began an investigation into a group of individuals located throughout Western Massachusetts and elsewhere who were engaging in the sexual exploitation of minors and/or the receipt, distribution, and possession of material involving the sexual exploitation of minors, commonly known as child pornography.   These individuals conducted part of their criminal activity by using Craigslist, various e-mail providers, and cellular phones.

21.     As a result of this ongoing criminal investigation, the investigative team, which now includes the Federal Bureau of Investigation ("FBI"), Massachusetts State Police ("MSP"), and other local police departments, have obtained numerous search warrants authorizing the search of residences, e-mail accounts, computers, phones, and other digital devices.   The investigative team has also interviewed several subjects.

22.     On June 25, 2015, I and other ICAC members executed state search warrants at ███████ residence in Southwick, Singer's residence in Southampton, MA, and Jenney's residence in Westfield.   On July 1, 2015, ICAC members executed state search warrants at Cote's residence in Woodstock, CT.   As set forth below, these search warrants and other investigative

9

steps resulted in probable cause that:

        a.     Cote and/or others engaged in the Subject Offenses;

        b.     The Subject E-Mail Accounts contain evidence, fruits and instrumentalities of the Subject Offenses; and

        c.     Cell site information for the Subject Cell Phones will contain evidence of the Subject Offenses.

<u>The Search of █████ s Residence and █████ s Statements</u>

23.     During the search warrant at █████ s residence, officers conducted a preliminary search of a Toshiba laptop computer that revealed numerous thumbnail images of child pornography. Officers also seized a ZTE Z678G Midnight cellular phone with telephone number (413) 562-6526 (the "█████ Cell Phone"). According to WPD's in-house records, this telephone number belongs to █████ According to e-mails sent by █████'s e-mail account, westmassmale@yahoo.com, this telephone number was used by █████. The █████ Phone's contact list contained the following:

        a.     Eric: (413) 519-8078. As set forth at paragraph 29 *infra*, this phone belongs to Jenney.

        b.     Steve Dunkin: (413) 271-4075. As set forth at paragraph 65 *infra*, this phone belongs to Cote.

24.     At the conclusion of the search, █████ waived his *Miranda* rights both orally and in writing and consented to a recorded interview. In this interview, █████ initially denied sending or receiving any child pornography, but admitted that he has a fantasy sexual interest in children and he has talked about trading photographs of child pornography. Later, █████ admitted that he received child pornography that he did not want and deleted the files. After the

10

recording, ▉▉ volunteered that he knew an individual who had sexual contact with a child in Westfield and agreed to go to the WPD for a voluntary interview.

25.     At the WPD, ▉▉ waived his *Miranda* rights both orally and in writing  and stated, among other things:

     a.     On New Year's Eve of 2013-2014, ▉▉ picked up his friend Bruce, his friend Steve, and ▉▉▉▉▉▉▉ at Steve's home in Westfield, Massachusetts.  According to ▉▉, the men had cocaine that ▉▉ had obtained from a supplier. ▉▉ did not know Steve's last name or ▉▉▉▉▉ name.  However, ▉▉ knew that Steve used to work at the Dunkin Donuts downtown, lived on Taylor Avenue near the Dunkin Donuts on Main Street, and used cellular telephone number (413) 271-4075.  [*As set forth infra at paragraph 65, Cote worked at Dunkin Donuts, lived on Taylor Street in Westfield, and used cellular telephone number (413) 271-4075.  I believe that* ▉▉▉▉ *"Steve" is Cote.*]

     b.     ▉▉ brought Steve, ▉▉▉▉▉, and Bruce to Eric Jenney's home located on a *cul de sac* near the Knollwood Area of Westfield.  According to ▉▉, "they started partying" (*i.e.*, using cocaine) and everyone (except the ▉▉▉▉ was doing cocaine.  Steve and ▉▉▉▉ then took a shower, she came out of the shower naked, and Steve started fondling her and he took his penis out.  At some point, "they were all touching each other." ▉▉ denied touching ▉▉▉▉▉, and stated that he became anxious and left Jenney's home.

     c.     Later that night, Jenney sent him a text saying, "come back, come back"

and included a picture of a girl whom ▮▮ believed to be ▮▮▮▮▮▮ performing oral sex on a man whom ▮▮ believed to be Jenney. ▮▮ explained that he identified ▮▮▮▮▮▮ because he saw her head in the photograph, and he identified Jenney because he has seen both Jenney's and Steve's penis before. ▮▮ deleted the picture immediately. The picture was sent from Jenney's iPhone to ▮▮'s iPhone, which ▮▮ no longer has.

d.      ▮▮ went back to Jenney's home several hours later to check on everyone[1] and he found them still naked with ▮▮▮▮▮▮ sitting on Jenney's lap. He noticed Jenney's penis was between the child's legs but he does not think it was inside her vagina.

e.      Steve told ▮▮ that he and Bruce may have taken other photographs of Minor A on New Year's Eve.

f.      Steve explained to ▮▮ that "how it started" was Steve was living on Taylor Street, ▮▮▮▮ caught him watching pornography at night, and she started to want to watch it with him.

g.      Jenney has a thumb drive of photographs and videos of child pornography, and Jenney got his files from Steve, who got them from Bruce.

h.      On a prior occasion, ▮▮ had brought cocaine to Bruce's house, and he witnessed Bruce and Steve molesting ▮▮▮▮.

i.      ▮▮ did not inform law enforcement about the New Year's Eve incident because he knows that Jenney has firearms and ▮▮ is afraid of dying.

---

[1] ▮▮ initially stated that when he returned to Jenney's home, he found everyone dressed.

j.    Steve told ▮▮▮ that Bruce has other people who are also sharing ▮▮▮ ▮▮▮▮▮.

<u>The Search of Jenney's Residence and Jenney's Statements</u>

26.    During the execution of the search warrant at Jenney's residence, Jenney waived his *Miranda* rights orally[2] and agreed to be interviewed. During an initial phase of the interview, which was not recorded, Jenney stated:

    a.    The officers would not find any child pornography at his home.

    b.    Jenney did not know a man named Stephen Cote or a man named Bruce.

    c.    However, Jenney did recall the following episode involving a man named Steve (whose last name he did not know):

        i.    ▮▮▮ brought Steve and ▮▮▮▮▮ to his house.

        ii.    ▮▮▮▮▮ took a shower and came out naked, and Jenney gave her a towel.

        iii.    Nothing inappropriate happened with ▮▮▮▮▮.

        iv.    For some unknown reasons, ▮▮▮ left early,

    d.    Jenney and ▮▮▮ would watch adult porn together and Tim would perform oral sex on him.

27.    At this point during the interview, an officer conducted a preliminary examination of a Sony DSC-P71 Cybershot camera (the "Sony Camera") which contained a 16 MB memory stick. The 16 MB memory stick contained a file entitled "dsc02089.jpg," which depicted a

---

[2] Prior to the interview, the officers presented a written *Miranda* waiver form to Jenney. Jenney read the waiver form, but did not sign it because he was handcuffed, and orally agreed to be interviewed.

young girl's vagina spread open.[3] The girl's face is not depicted, but I believe this photo depicts Minor A because of a distinctive mark located on her perianal area. The background of the image is highly consistent with the upholstery of the couch in Jenney's home. According to the file information:

      a.    File Created: January 1, 2014 at 12:13:28 a.m., or shortly after midnight on New Year's Eve 2013-14.

      b.    Last Written: January 1, 2014 at 12:13:28 a.m. (i.e., the same date and time).

      c.    Last Accessed: January 1, 2014 (with no time).

28.    MSP Trooper Matthew Simpson then arrived with an audio recorder, which he used to record the remainder of the interview. During the recorded phase of the interview, Trooper Simpson reminded Jenney that he had been advised of his *Miranda* rights and confirmed that Jenney understood those rights, had no questions concerning them, and still wanted to speak to the officers. Jenney then stated:

      a.    Jenney and his wife use the Sony Camera, but he had not used the camera "in forever."

      b.    When told that the agents also found a photograph that depicted a young girl's vagina spread open (*i.e.*, dsc02089.jpg) against a background that matched his furniture, Jenney stated he had no knowledge of the photograph.

      c.    When told that Steve and ██████ were at Jenney's house on New

---

[3] I am attaching under seal a copy of this image as Exhibit 1. I respectfully request that the Court return this image to me so that I can maintain it in a NPD evidence vault.

Year's Eve 2013-14, ▮▮▮▮▮▮ was naked, and the photograph was taken on New Year's Eve 2013-14, Jenney reiterated that he had no knowledge of the photograph, disclaimed any knowledge of her sexual abuse, and stated that the officers would not find any other photographs of child pornography.

d.     Later in the interview, Jenney stated that one night (which he could not specifically recall as New Year's Eve because he was using cocaine during this period):

    i.     ▮▮▮ brought Steve and ▮▮▮▮▮▮ to Jenney's house. The men were using cocaine and watching pornography.

    ii.    At some point, ▮▮▮▮▮▮ took a shower and emerged from the bathroom naked, and Jenney gave her a towel.

    iii.   Jenney watched while Steve fondled ▮▮▮▮▮, rubbed her stomach and her breasts, rubbed his penis against her, licked her vagina, and placed his penis in her mouth.

    iv.    Jenney denied that he himself had any sexual contact with ▮▮▮ and insisted that he just watched the sexual contact.

    v.     When asked how Steve got home that night, Jenney said he might have driven Steve.

e.     There was a "chance" that the officers would find child pornography on his computer. When the officers informed him that they had found a thumb drive in his desk that was full of child pornography, Jenney claimed that the thumb drive belonged to ▮▮▮.

f.     ▮▮▮ "has been this way (*i.e.*, sexually interested in children) for a very

15

long time.  Long before I was around.  I'm not into it.  That's why we don't hang around anymore together . . . but once in a while."  ███ was last at Jenney's approximately ten days ago.

g.    When asked why ███ left but Jenney allowed the sexual contact to continue, Jenney said he did not know.  When asked how ███ knew what happened if he left before the sexual contact began, Jenney said he did not know.

h.    Steve has occasionally texted Jenney, looking for ███.

29.    I have reviewed the 16 MB memory stick that contained the file entitled "dsc02089.jpg" and performed a logical acquisition of an iPhone 5C (A1532) that was seized pursuant to the search warrant at Jenny's residence.  The iPhone's telephone number was (413) 519-8078.  The memory stick contains four other images, including the following two files:

i.    an image of a young, clothed female believed to be Jenney's daughter;

ii.    an image with entitled "dsc02088.jpg," which depicts what appears to be a naked child who sitting on the naked lap of an adult male, with the male's penis either positioned between the legs of the child or penetrating the child.[4]  According to the file information:

(1)    File Created:  January 1, 2014 at 12:12:32 a.m., or shortly after midnight on New Year's Eve 2013-14.   Notably, this create date/time was approximately one minute before the create date/time of "dsc02089.jpg," which I believe depicted a Minor A's

---

[4] I am attaching under seal a copy of this image as Exhibit 2.  I respectfully request that the Court return this image to me so that I can maintain it in a NPD evidence vault.

vagina spread open.

    (2)    Last Written: 01/01/14 12:12:32 AM

    (3)    Last Accessed:  01/01/14 (no time)

#### The Search Of Singer's Residence and Singer's Statements

30.    During the search of Singer's residence in Southampton, MA, Singer waived his *Miranda* rights orally and in writing, and consented to a recorded interview.  During this interview, Singer stated, among other things, that he possessed somewhere between 100 and 1,000 images of child pornography.

31.    Pursuant to the search warrant, investigators seized numerous digital devices belonging to Singer, including eight cellular phones, computers, hard drives, and other external media that collectively included approximately 13,000 digital image files and 1,100 video files depicting the sexual exploitation of minors.  These devices include an iPhone 4 with serial number C8QGYJZKDP0V (the "Singer iPhone 4") and an iPhone 5S with serial number DNPNR6GBFNJJ (the "Singer iPhone 5").  The iPhone 4 had telephone number (201) 261-4893 and the iPhone 5 had telephone number (201) 370-7384.

#### The Forensic Examination of Singer's Phones

32.    On or about June 26, 2015, I conducted a forensic examination of the Singer iPhone 4 and IPhone 5S.  As set forth below, on the Singer iPhone 4, I discovered thirteen image files depicting an approximately six-year old minor female ("Minor A") [5] engaged in sexually explicit conduct, as well as other image files depicting Minor A in non-illicit poses.  The thirteen

---

[5] I have positively identified Minor A as ▮▮▮▮▮▮, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Minor A was born on ▮▮▮▮▮ 2007 resided with ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮.

illicit images are set forth below[6]:

a.    Pic_41.jpg.  This file depicts Minor A sitting on a hardwood floor with her legs spread open wearing nothing but socks.  Minor's face is not visible, but subsequent photos in this series (*i.e.*, Pic_42.jpg, Pic_43.jpg, and Pic_44.jpg) clearly depict parts of her face.  According to its file information, the File Time was May 5, 2013 at 21:06:53 EDT.

b.    Pic_42.jpg.  This file depicts also Minor A sitting naked on a hardwood floor with her legs spread open wearing nothing but socks, but the photograph is zoomed out to depict part of her face.  According to its file information, the File Time was May 5, 2013 at 21:06:54 EDT.

c.    Pic_43.jpg.  This file depicts Minor A from the rear kneeling naked on a hardwood floor, with the right side of her face clearly visible.  According to its file information, the File Time was May 5, 2013 at 21:09:32 EDT.

d.    Pic_44.jpg.  This file depicts a more close-up image of Minor A from the rear naked kneeling on a hardwood floor, with the right side of her face clearly visible.  According to its file information, the File Time was May 5, 2013 at 21:09:32 EDT.

e.    Pic_45.jpg.  This file depicts a more close-up image of Minor A's naked buttocks from the rear with the hardwood floor in the background, with her jeans pulled down.  Minor A's face is not visible.  According to its file information, the

---

[6] I am attaching under seal copies of these thirteen images as Exhibit 3.  I respectfully request that the Court return these images to me so that I can maintain them in a NPD evidence vault.

File Time was May 5, 2013 at 21:12:05 EDT.

f.    Pic_66.jpg.   This file depicts an unknown individual spreading open the vaginal area of Minor A as she lays on her stomach.   Minor A's face is not depicted, but I believe this photo depicts Minor A because of a distinctive mark located on her perianal area.[7]  According to its file information, the File Time was June 16, 2013 at 22:04:12 EDT.

g.    Pic_67.jpg.   This file depicts an unknown individual spreading open the vaginal area of Minor A as she lays on her stomach.   Minor A's face is not depicted, but I believe this photo depicts Minor A because of a distinctive mark located on her perianal area.  According to its file information, the File Time was June 16, 2013 at 22:04:12 EDT.

h.    Pic_68.jpg.   This file depicts an unknown individual spreading open the vaginal area of Minor A as she lays on her stomach.   Minor A's face is not depicted, but I believe this photo depicts Minor A because of a distinctive mark located on her perianal area.  According to its file information, the File Time was June 16, 2013 at 22:07:33 EDT.

i.    Pic_78.jpg.   This file depicts Minor A holding a man's erect penis.  The man's face is not visible.  According to its file information, the File Time[8] was

---

[7]On July 13, 2015, Bristol County Family and Child Center Pediatric Nurse Mildrene Tulysse physically examined Minor A and observed a distinctive mark on her perianal area. Tulysse also reviewed the photos that depicted this image and the following images that also bore a distinctive mark on the perianal area.  In Tulysses's opinion, the marks appeared similar but she not could definitively state that they were the same.

[8] I used the Lantern forensic software to examine the iPhone 4.  The Lantern software uses "File Time" to describe the Hierarchical File System (HFS) creation date and time.

July 19, 2013 at 09:59:22 EDT.

j.      Pic_98.jpg.  This file depicts an adult male inserting his penis into the mouth of Minor A.   The man's face is not visible.   According to its file information, the File Time was January 11, 2014 at 19:21:27 EST.

k.      Pic_100.jpg.  This file depicts an unknown individual spreading open the vaginal area of Minor A.   Minor A's face is not depicted, but I believe this photo depicts Minor A because of a distinctive mark located on her perianal area. According to its file information, the File Time was January 11, 2014 at 19:21:04 EST.

l.      Pic_103.jpg.  This file depicts Minor A lying naked on a towel with her vaginal area spread open.   Minor A's face is not depicted, but I believe this photo depicts Minor A because of a distinctive mark located on her perianal area. According to its file information, the File Time was January 15, 2014 at 19:04:20 EST.

m.      Pic_104.jpg.  This file depicts an unknown individual spreading open the vaginal area of Minor A.   Minor A's face is not depicted, but I believe this photo depicts Minor A because of a distinctive mark located on her perianal area. According to its file information, the File Time was September 25, 2014 at 12:51:30 EDT.

n.      Pic_138.jpg.    This file depicts Minor A in a child's bedroom with hardwood flooring; she is dressed in a yellow princess gown.   According to its file information, the File Time was October 6, 2014 at 13:08:46 EDT.

33.   Singer's iPhone 4 had a Contact List that included a contact for "Steve" (*i.e.*,

20

Cote's first name) with the following information:

  a.  Home: tyrant0807@gmail.com (*i.e.*, the first of the Subject E-Mail Accounts);

  b.  Other: tyrant0807@gmail.com

  c.  Mobile: 413-271-4075

  d.  Created: August 26, 2013.

  e.  Modified: March 27, 2013

  34.  Singer's iPhone 5 also had a Contact List that included a contact for "Steve" with the following information:

  a.  Other: tyrant072013@gmail.com (*i.e.*, the second Subject E-Mail Account)

  b.  Mobile: 413-271-4075 (*i.e.*, the same telephone number as listed for "Steve" in the iPhone 4).

  c.  Created: February 25, 2015.

  d.  Modified: May 31, 2015.

  35.  As set forth *infra* at paragraph 57 *et seq.*, on July 1, 2015, officers of the Connecticut State Police ("CSP"), assisted by the MSP, executed a search warrant at the residence of Kristen Carey in Woodstock, CT where Cote was staying with his wife, Kimberly Bovenzi Cote. The officers seized, among other items, three cellular phones with telephone number (413) 271-4075. As set forth *supra* at paragraphs 64, Cote waived his *Miranda* rights orally and in writing, and he consented to an audio-recorded interview. In that interview, Cote informed the officers that his telephone number was (413) 271-4075 and that he used the following e-mails: tyrant0807@gmail.com, tyrant072013@gmail.com, either

tyrant0706@gmail.com or tyrant0806@gmail.com, and froggy8706@yahoo.com. Based upon my training, experience, and knowledge of the case, I believe that Singer's contacts for "Steve" relate to Cote.

36.     In addition, on both the Singer iPhone 4 (and its backup file) and the Singer iPhone 5, I located numerous text message exchanges between Singer and cellular telephone number (413) 271-4075, which I believe was used by Cote.   As set forth below, many of these text messages refer to sexually explicit conduct involving minors.

37.     For example, on April 29, 2013, Singer sent or received the following messages to an individual whom, based upon my training, experience, and knowledge of the case, I believe to be Cote:

    a.     4:03:07 PM: Singer received an a message that stated, "She is in grade k . She is only 5 gonna be 6 in august. So if you want to come by you can we are gonna start about 830." Based upon my training, experience, and knowledge of the case (including Minor A's birthday), I believe that this message refers to Minor A.

    b.     4:04:13 PM: Singer sent a message that stated, "K."

    c.     4:07:49 PM: Singer received a message without text that included a file entitled "Photo-0086.jpg." This file depicts Minor A on a bicycle in the Raymour and Flanagan furniture store parking lot on Boston Road, Springfield, MA. As set forth infra at paragraph 65(q), I believe that Cote took this photograph.

    d.     4:12:36 PM: Singer received a message that stated, "I want all of us to eat her and cum on her pussy like i saw on the video."

    e.     April 29, 2013 at 4:20:18 PM: Singer sent a message that stated, "It

should have said purrfect."

38.     On the following day, April 30, 2013, Singer sent or received the following messages to an individual whom, based upon my training, experience, and knowledge of the case, I believe to be Cote:

a.     <u>8:01:34 AM</u>:  Singer received a message without text that included a file entitled "Photo-0234.jpg."  This file depicts Minor A wearing a tank top and underwear lying on a couch.  According to its file information, the File Time was April 30, 2013 at 08:01:34 EDT.

b.     <u>8:10:10 AM</u>:  Singer sent a message that stated, "That's the good news... the bad news is I couldn't get out of this trip.  I'm halfway there... won't be back til later tomorrow night."

c.     <u>8:11:39 AM</u>:  Singer sent a message that stated, "I understand about Steve. Gonna have to wait til Thursday. Can she be there then?"

d.     <u>9:35:01 AM</u>: Singer received a message that stated, "K."

e.     <u>11:57:22 AM</u>: Singer sent a message that stated, "Nice!!"

f.     <u>11:57:51 AM</u>:  Singer received a messaged that stated, "So you like lol."

g.     <u>12:02:13 PM</u>: Singer received a message that stated, "I want to play with each other while we watch the motio and exchange storys." [sic]

h.     <u>12:08:16 PM</u>: Singer received a message that stated, "Sounds good."

i.     <u>12:09:02 PM</u>: Singer received a message that stated, "Im getting hard."

j.     <u>12:18:35 PM</u>:  Singer received a message that stated, "So is that something you wanna try thursday?"

k.     <u>12:34:03 PM</u>: Singer received a message without text that included a file

23

entitled, "Photo-0238.jpg." This photo depicts the buttocks and vaginal area of a prepubescent female who appears standing in thigh-deep water.[9] According to its file information, the File Time was April 30, 2013 at 12:34:23 EDT. An apparently identical version of this file, named "Pic_17.jpg," was also located on Singer's iPhone 4.

l.      12:39:43 PM: Singer sent a message that stated, "Really, I would love to lick her... getting so hard."

m.      12:42:25 PM: Singer received a message that stated, "Need to find someone young to play with her while we watch lol."

n.      12:44:22 PM: Singer sent a message that stated, "Think we could play? Or, at least, get her to model?" Based upon my training, experience, and knowledge of the case, I believe that in this message, Singer is asking Cote whether they could sexually abuse Minor A or, at least, have her pose naked for them.

o.      12:53:28 PM: Singer sent a message that stated, "Going back to mtg... if u get more pics,..."

p.      12:53:55 PM: Singer received a message that stated, "K."

q.      2:14:19 PM: Singer received a message that stated, "Wife on her way home. Ill text you in the morning."

39.     On the following day, May 1, 2013, Singer sent or received the following

---

[9] I am attaching under seal a copy of this image as Exhibit 4. I respectfully request that the Court return this image to me so that I can maintain it in a NPD evidence vault.

messages to an individual whom, based upon my training, experience, and knowledge of the case, I believe to be Cote:

    a.    <u>9:02:46 AM</u>:  Singer sent a message that stated, "Keep you posted... if there are anymore pics, ... mmm."

    b.    <u>9:09:31 AM</u>:  Singer received a message that stated, "Just normal pics" and included two files:

        i.    <u>Photo-0189.jpg</u>. This file depicts Minor A in a purple princess dress standing in front of a television inside a room.  According to its file information, the File Time was May 1, 2013 at 09:09:31 EDT.

        ii.    <u>Photo-0218.jpg</u>. This file depicts Minor A in her pajamas with a hat and sunglasses inside a room.   According to its file information, the File Time was May 1, 2013 at 09:09:48 EDT.

    c.    <u>9:14:46 AM</u>:   Singer sent a message that stated, "She's absolutely adorable!  Hope we can get some more soon.  Btw, did you hear anything from the CL ad? TTYL."  Based upon my training, experience, and knowledge of the case, I believe that "CL" refers to Craigslist.

    d.    <u>9:15:33 AM</u>:  Singer received a message that stated, "No posting it today."

    40.    On the following day, May 2, 2013, Singer sent or received the following messages to an individual whom, based upon my training, experience, and knowledge of the case, I believe to be Cote:

    a.    <u>9:35:02 AM</u>:  Singer sent a message that stated, "10 okay? Have any more pics?"

    b.    9:40:58 AM:  Singer received a message that stated, "10 is fine" and

included a file entitled "Photo-0217.jpg." This file depicted a clothed Minor A standing in the same room as Photo-0189.jpg. According to its file information, the File Time was May 2, 2013 at 09:41:19 EDT.

c.      9:44:31 AM:  Singer sent a message that stated, "Good. Want me bring my granddau's panties, too?"[10]

d.      9:53:12 AM:  Singer received a message that stated, "Yes you can."

e.      9:56:07 AM:  Singer sent a message that stated, "My granddau when she's asleep."

f.      9:56:47 AM:  Singer received a message that stated, "Look or touch?"

g.      9:57:03 AM:  Singer sent a message that stated. "Both."

h.      9:57:58 AM:  Singer received a message that stated, "Nice. How old is she."

i.      9:58:55 AM:  Singer sent a message that stated, "9. How much have you done with your dau?"

j.      10:01:03 AM:  Singer received a message that stated, "Just touch her pussy in the tub or when she sleeps sometimes but wanna lick her pussy so bad. How about you what have you done."

k.      10:02:58 AM:  Singer sent a message that stated, "Besides touching her pus n butt, I did lick her pus. Is she ok with your touching?."

l.      10:04:22 AM:  Singer received a message that stated, "Yes because the

---

[10] The investigation has determined that Singer does not have any granddaughters of his own, but was repeatedly requesting that another man provide him with the panties of his young daughter.

way i do it she thinks im washing her. Lol."

m.      10:05:04 AM:  Singer received a message that stated, "How did it taste? Im getting horny and hard."

n.      3:42:48 PM:  Singer received a message that stated, "Yes. Wife will be home in about 20 mins."

o.      3:43:25 PM:  Singer sent a message that stated, "Is ur little peach home?" Based upon my training, experience, and knowledge of the case, I believe that "ur little peach" refers to Minor A.

p.      3:43:50 PM:  Singer received a message that stated, Yes."

q.      3:46:09 PM:  Singer sent a message that stated, "Ever since u sent it, I've thought about how yummy it would be... the image is in my head ...."

r.      4:11:30 PM: Singer sent a message that stated, "Oh yeh."

s.      4:12:05 PM: Singer received a message that stated, "Im hard again lol."

41.    On July 31, 2014, Singer sent or received the following messages to an individual whom, based upon my training, experience, and knowledge of the case, I believe to be Cote:

a.      1:22:10 PM:  Singer received a message that stated, "Look at that nice clit" and included a file entitled "PART_1406827319824.jpg." This file depicts an apparently adult vagina.[11]

b.      1:26:52   PM:      Singer   received   a   message   that   stated, "Tyrant0807@gmail.com." This is one of the Subject E-Mail Accounts that I believe is used by Cote to send or receive child pornography.

---

[11] At other times during the text exchanges, Singer either sent or received both adult pornography from the individual whom I believe to be Cote.

c.     1:27:41 PM:  Singer sent a message that stated, "Mmm... I'll bet it's delicious."

d.     1:28:14 PM:  Singer received a message that stated, "Yes."

42.    On February 17, 2015, Singer sent or received the following messages, which based upon my training, experience, and knowledge of the case I believe relate to a photograph depicting a naked minor that Singer sent to one of Cote's e-mail addresses.[12]

a.     10:28:47 AM:  Singer sent a message that stated, "Check your e-mail...."

b.     10:29:42 AM:  Singer received a message that stated, "Ok."

c.     10:34:54 AM:  Singer received a message that stated, "Those are some big nipples lol."

d.     10:38:23 AM:  Singer sent a message that stated, "On a young one."

43.    On May 31, 2015, Singer sent or received the following messages, which based upon my training, experience, and knowledge of the case I believe relate to a photograph depicting a naked approximately fifteen year-old female that Singer sent to Cote at both of the Subject E-Mail Accounts. *See infra* at paragraph 54.

a.     6:28:08 PM:  Singer received a message that stated, "Did you send to my new Gmail?  Because there is nothing on my box."

b.     6:29:33 PM:  Singer sent a message that stated, "Tyrant0807?"

c.     6:29:38 PM:  Singer received a message that stated, "tyrant072013."

d.     6:30:19 PM:  Singer sent a message that stated, "I'll resend."

e.     6:36:47 PM:  Singer sent a message that stated, "Check now."

---

[12] I have not been able to locate the e-mail referenced in this chat.

  f.  7:20:28 PM:  Singer received a message that stated, "Was it just the one

pic?  And I wanna fuck her lol she is gorgeous."

  g.  7:21:02 PM:  Singer sent a message that stated, "Lol... yes, just the 1."

  44.  On or about August 29, 2015, Det. Sgt. Popielarczyk and I executed a search

warrant for Singer's Microsoft e-mail account, pers13572468@hotmail.com, that had been issued

by the Hampshire County Superior Court.  On August 29, 2015, we reviewed the search warrant

results provided by Microsoft.  According to the Microsoft records, pers13572468@hotmail.com

engaged in e-mail exchanges with the following three addresses that, based upon my training,

experience, and knowledge of the case, I believe were used by Cote:

  a.  tyrant0807@aim.com;

  b.  tyrant0807@gmail.com; and

  c.  tyrant072013@gmail.com.

  45.  On June 26, 2013 at 5:28:59 PM EDT, Singer sent an e-mail to

tyrant0807@aim.com, stating "im online if you want to chat.  any other pics for me to get hard

too lol."  Based upon my training, experience, and knowledge of the case, I believe that in this e-

mail, Singer is requesting images of minors engaged in sexually explicit conduct for him to

become sexually aroused.

  46.  On June 26, 2013 at 5:35 PM EDT, Singer sent another e-mail to

tyrant0807@aim.com, stating "I'm here with an electrician . . . won't be back online for a little

while. . . meantime, enjoy.  and, thanks for letting me 'talk' to [Minor A's nickname]!."  Based

upon my training, experience, and knowledge of the case, I believe that in this e-mail, Singer is

thanking Cote for permitting him to engage in an online chat with Minor A.

  47.  On August 13, 2013 at 4:35:31 PM EDT, Singer sent another e-mail to

tyrant0807@aim.com, entitled "RE: Hey, Steve." The message stated, "Good, glad to hear everything okay. Working on getting your phone replaced? Let's try and get together before [Minor A's nickname] goes back to school! The hot bath has been wondering where she is...."[13]

48.     In addition to sending e-mails to tyrant0807@aim.com, Singer also sent from pers13572468@hotmail.com to the two e-mail accounts referenced in Singer's text messages with Cote: tyrant0807@gmail.com and tyrant072013@gmail.com. According to the Microsoft records, "Stephen Cote" or "Steve Cote" was listed in certain header information as the user of tyrant0807@gmail.com and tyrant072013@gmail.com. Among these e-mails, Singer and Cote also engaged in frank or suggestive sexual conversation, and Singer sent several images that I believe depict minors engaged in sexually explicit conduct.

49.     On August 3, 2014, Singer sent an e-mail to tyrant0807@gmail.com that stated, "I dream about [Minor A's first three initials] all the time . . . ." Approximately six minutes later, tyrant0807@gmail.com, "me too."

50.     On August 13, 2014, Singer exchanged a series of e-mails with tyrant0807@gmail.com account.

> a.     On August 13, 2014 at 16:26 EDT, Singer sent an e-mail with the heading "Re:" and no text, which included the following files: [14]

---

[13] On June 29, 2015, Minor A participated in a forensic interview with Jessica Costigan of the Bristol County Child Advocacy Center. Minor A stated in pertinent part, that her father had a friend named Bruce and she had been in his hot tub with her father and Bruce, although she did not disclose any sexual abuse by anyone, including Singer or Cote. When asked if anyone had ever taken any photographs of her, Minor A only described a photograph of her displaying the "peace sign" with both hands.

[14] I am attaching under seal copies of these images as Exhibit 5. I respectfully request that the Court return these images to me so that I can maintain them in a NPD evidence vault.

        i.      38648276pka.jpg. This depicts a clothed pre-pubescent female wearing a tank top and jean shorts and her nipples are pressed against her shirt;

        ii.      38632263ire.jpg. This depicts two pre-pubescent females at a beach with one of the females unclothed with her right breast and nipple visible to the camera; and

        iii.      38571560wdj.jpg. This depicts two teenage females with the wearing two piece bathing suits with the camera focused in on one of the females buttocks.

        b.      On August 13, 2014 at 16:29:39 EDT (i.e., three minutes later), tyrant0807@gmail.com replied to Singer and stated, "Naked one and one with titty nubs lol." I believe this refers to 38632263ire.jpg.

51.    On August 22, 2014 at 15:27, Singer replied to tyrant0807@gmail.com with an e-mail that stated "About 7yo?" and included the following two files:

        a.      38395372zyv.jpg. This file depicts a pre-pubescent female wearing a two-piece bathing suit that barely covers pubic area;

        b.      38395124mmy.jpg. This file depicts a pre-pubescent female wearing a bathing suit bottom and no top with her breasts exposed.[15]

52.    On September 24, 2014 at 20:30:20 hours, Singer sent an e-mail to tyrant0807@gmail.com account with no text and the four files, including one file entitled

---

[15] I am attaching under seal copies of these images as Exhibit 6. I respectfully request that the Court return these images to me so that I can maintain them in a NPD evidence vault.

"39370734idp.jpg."[16]  This file depicts a pre-pubescent female lying on the floor wearing black see-through panties that exposes her vagina and a half-shirt that exposes her midriff. Approximately five minutes later, tyrant0807@gmail.com replied to Singer by stating, "Love the one in black pantys [sic]."

53.    On September 25, 2014 at 15:37:41 hours, Singer sent an e-mail to tyrant0807@gmail.com account with the following eight images that depict the same minor as in 39370734idp.jpg, although in different poses that variously exposes her vagina: 3937052twv.jpg, 39370751znm.jpg, 39370750tyw.jpg, 39370669ouq.jpg, 39370665scj, 39370627bkf.jpg, 39370626qil.jpg, and 39370540jgk.jpg.[17]     Approximately eight minutes later, tyrant0807@gmail.com responded, "Need to see without pantys lol."

54.    On May 31, 2015 at 10:58:59 EDT, Singer sent an e-mail to tyrant0807@gmail.com (i.e., the first Subject E-Mail Account) with the header "Mmm..." the message "Thought you might enjoy her-" and a file entitled "42730978rzh.jpg."  This file depicts an approximately fifteen year-old female lying naked on a bed with her finger inserted into her vaginal area.[18]     That same day at 14:36:10 EDT, Singer sent an e-mail with the same file, without any header or message, to tyrant072013@gmail.com (i.e., the second Subject E-Mail Account).   I believe that these e-mails relates to the text message exchanged between Singer and Cote on May 31, 2015. *Supra* at paragraph 43.

---

[16] [16] I am attaching under seal a copy of this image as Exhibit 8.  I respectfully request that the Court return these images to me so that I can maintain them in a NPD evidence vault.

[17] I am attaching under seal copies of these images as Exhibit 8.  I respectfully request that the Court return these images to me so that I can maintain them in a NPD evidence vault.

[18] I am attaching under seal a copy of this image as Exhibit 9.  I respectfully request that the Court return these images to me so that I can maintain them in a NPD evidence vault.

55.     On June 18, 2015 at 18:55:03, tyrant072013@gmail.com replied to Singer's May 31, 2015 e-mail and stated, "I can't stop looking at her lol."   That same day at 19:18:56, Singer responded, "I understand . . . you must be feeling better!"   That same day at 19:20:09, tyrant072013@gmail.com replied. "Never too sick to look at young pussy lol." That same day at 19:43:05, Singer responded to tyrant072013@gmail.com with an emoticon that depicted a smiling face with a tongue sticking out of its mouth.

56.     On September 1, 2015, Singer was indicted by a grand jury in *Commonwealth v. Bruce Singer*, Hampshire Superior Court Docket No. 15-104 with eight counts of possession of child pornography and seven counts of dissemination of child pornography.   This case is still pending.   The following counts related to images contained in e-mails sent by Singer to the Subject E-Mail Accounts:

| Count | Date | E-Mail Account |
|---|---|---|
| Ten | August 13, 2014 | tyrant0807@gmail.com |
| Eleven | August 22, 2014 | tyrant0807@gmail.com |
| Twelve | September 24, 2014 | tyrant0807@gmail.com |
| Thirteen | September 25, 2014 | tyrant0807@gmail.com |
| Fourteen | May 31, 2015 | tyrant72013@gmail.com |

## The Search Of Cote's Residence And the Interview Of Cote

57.     On July 1, 2015, CSP officers, assisted by the MSP, executed a search warrant at a residence in Woodstock, CT where Cote was staying with his wife, Kimberly Bovenzi Cote ("Kimberly"). Officers seized four cellular telephones:

a.     A Samsung CDMA SCH-S738C Galaxy Centura TracFone with telephone

33

number (413) 271-4075 and IMSI 3100004134620928. The CSP conducted a physical extraction and a logical extraction of data from this phone.

b.      An LG GSM LGL39C Optimus Dynamic II with telephone number (413) 271-4075 and MEID 268435461214931706. The CSP conducted a file system and logical extraction of data from this phone, but not a physical extraction. The CSP identified the file system as named for "Steven."

c.      An LG GSM LGL39C Optimus Dynamic II with MEID 268435461213054309. The CSP conducted a file system and logical extraction of data from this phone, but not a physical extraction. The CSP identified the file system as named for "Kimberly," which is Cote's wife's first name.

d.      A Samsung SGH-T340G (GP) with telephone number (413) 427-4075 and IMEI 355873042240110. The CSP conducted a file system and logical extraction of data from this phone, but not a physical extraction.

58.    Physical extraction provides a bit-by-bit copy of the entire flash memory of a mobile device. This extraction method not only enables the acquisition of intact data, but also data that is hidden or has been deleted. By contrast, a file system and logical extraction may not recover such deleted or hidden data.

59.    In a physical extraction, deleted data can be recovered from many levels.

a.      The first is the file system level. During the file system reconstruction process, it is possible, in many occasions, to recover deleted files.

b.      The second level is retrieving deleted information from database files. In some database files that can be found on smartphones, it is possible to recover deleted records, such as call log entries, contacts, and messages, etc. The second

level of recovery can also be carried out in file system extraction.

    c.    Supported data types obtained using physical extraction include intact and deleted passwords, installed applications, geo tags, location information, media files such as photos and videos taken by the user, GPS fixes, emails, chats and more.

60.    According to the CSP examination of Cote's LG GSM LGL39C Optimus Dynamic II, the phone contained a contact list that included the following:

    a.    Bruce: (201) 370-7384. According to the forensic examination of Singer's iPhone 5, this number belongs to Singer's iPhone 5.

    b.    Eric: (413) 519-8078. As set forth in paragraph 29, this number belongs to Jenney.

    c.    Will: (413) 562-6526. As set forth in paragraph 23, this number belongs to █████

61.    According to the CSP examination of Cote's LG GSM LGL39C Optimus Dynamic II, there were e-mails, SMS messages, MMS messages, and chats, but no communications with ██████ Jenney, or Singer, except for 32 SMS messages with or pertaining to Singer. However, as explained at paragraph 58, this examination would not recover deleted or hidden files.

62.    According to the CSP examination of Cote's Samsung CDMA SCH-S738C Galaxy Centura TracFone, the telephone's list included an entry for an individual named "Bruce" with telephone number (201) 370-7384, which belongs to Singer. In addition, the phone exchanged numerous SMS text messages with "Bruce."

63.     According to the CSP examination of the Samsung SGH-T340G (GP), the phone had a contact list containing an entry for "Bruce from group" with telephone number (201) 370-7384, which belongs to Singer. In addition, the phone exchanged numerous SMS text messages with "Bruce from group."

64.     The CSP examinations did not locate any child pornography on any of the three phones examined (although Cote's LG GSM LGL39C Optimus Dynamic II contained photographs of adult penises and Cote's Samsung CDMA SCH-S738C Galaxy Centura TracFone depicted adult pornography, including Cote engaging in sexually explicit conduct with an adult female). However, as explained above at paragraph 58, these examinations would not recover deleted or hidden files.

65.     During the execution of the search warrant, Cote waived his *Miranda* rights orally and in writing, and he consented to an audio-recorded interview. MSP Troopers Matthew Simpson and CSP Trooper David Aresco then conducted an approximately three-hour interview with Cote. During this interview, Cote stated the following, in sum and substance:

     a.     Cote's telephone number is (413) 271-4075.

     b.     Cote obtained a smart phone in March 2015 and earlier used a "dumb" cell phone;

     c.     Cote has the following e-mail accounts:

          i.     tyrant072013@gmail.com (which he started using in approximately July 2013);

          ii.     tyrant0807@gmail.com (which he used until approximately July 2013);

          iii.     either tyrant0706@gmail.com or tyrant0806@gmail.com; and

36

iv.    froggy8706@yahoo.com (which he had about eight years ago);

d.    Cote lived in Westfield from approximately June 2013 to March 2014.

e.    Cote lived in Springfield from approximately 2011 to June 2013.

f.    Cote has not owned a computer for approximately six years.

g.    Cote still associates with a Southampton man named Bruce Singer.

    i.    In approximately January 2013, Cote met Singer on Craigslist through an ad that Cote posted to find a male for a threesome with his now ex-girlfriend;

    ii.    Cote "hit it off" with Singer, developed a sexual relationship with him (role-playing as father-son) until Cote met his wife in approximately October 2013, and now just hangs out with him approximately once a month.

    iii.    Cote talked and texted with Singer by phone, and exchanged photos with Singer by text message or e-mail ;

    iv.    Cote sent Singer sexually explicit photos of himself and his wife, and of other female friends;

    v.    Approximately a month ago, Singer sent Cote a photo of a girl who seemed less than eighteen years old;

    vi.    On a few times, Singer sent Cote pictures of other girls who did not look eighteen (who seemed approximately fourteen, with "tiny boobs" and no pubic hair), and he deleted these pictures;

    vii.    Cote commonly replied "in a smart ass way" to Singer's photographs of child pornography by texting, for example, "she's cute";

h.     From the ages of 12 to 15, Cote was forced to have sex with his mother (until she died), and he now looks at mother-son themed pornography;

i.     Cote has ███████████████████████████████████████████

███████████████████████████████████ ;

j.     When living in Westfield, Cote associated with another person, Eric LNU, that he had met on Craigslist for the purpose of having sex.

k.     When living in Westfield, Cote lived with his Aunt Dottie and husband Lenny on Taylor Street and he worked at Dunkin Donuts.

l.     Cote once attempted to locate child pornography by entering the search term "child porn" on Google at the Fall River Public Library, but was locked out of the computer;

m.     Cote used crack regularly until 2009 and relapsed in 2013;

n.     Cote denied ██████████████████████████ .

o.     Cote knows Singer has looked for child pornography because Singer told him and because approximately one year ago at Singer's house, Singer showed him child pornography of a 13 year-old Pennsylvania girl and her sister, which Singer told him had been sent to him by the girls' father;

p.     Once or twice, Cote took Minor A to Singer's house to hang out;

q.     Cote took a photograph of Minor A on a bicycle in the Raymour and Flanagan furniture store parking lot on Boston Road, Springfield, MA. I believe that Cote sent this photograph to Singer on April 29, 2013. *See supra* at paragraph 37.

r.     When told that Singer's phone contained naked photographs of Minor A

along with the photograph of Minor A on a bicycle in the parking lot, he repeatedly stated that he had no idea how those photographs had been taken or were intermixed with the parking lot photo.

s.     When Cote was asked if there was any way that he might not remember taking the naked photographs, he stated that he "disassociates" and "goes days without remembering anything." For example, he once "trashed a whole conference room during a disassociation and don't remember, and woke up at UMass Medical Center three days later" and "I cook without even knowing I cook."[19]

t.     Cote denied knowing a person named ▮▮▮▮▮▮ but when showed a photograph of ▮▮▮ Cote stated that he knew this person as "Will" and that he had a "one-time Craigslist hookup" with "Will" at his Springfield residence. According to the forensic examination of Cote's LG Optimus Dynamic II, it contained a contact for "Will" with telephone number (413) 562-6526. According to Westfield Police Department ("WPD") in-house records, this telephone number belongs to ▮▮▮

u.     Cote denied leaving his home with Minor A during 2013-2014 New Year's Eve, and explained that he was incapacitated due to a knee injury. Cote insisted that he and Minor A were home all New Year's Eve in Westfield with Aunt Dottie and her husband, Lennie, and that he was "pumped up on Percocets" and "out cold." Cote stated that he did not leave the house for two weeks after

---

[19] Cote confirmed that he was not currently disassociating.

this injury.[20]

v.   Cote denied going anywhere else with "Will," denied that "Will" ever took him and Minor A anywhere, denied ever going to Eric's house with Minor A, denied sexually abusing Minor A, and denied ever taking child pornography with Minor A.

<u>The September 16, 2015 Follow-Up Interview of █████</u>

66.   On September 16, 2015, █████ waived his *Miranda* rights both orally and in writing and consented to a recorded interview at Southwick Police Department. █████ stated:

a.   █████ used the alias of "Steve" but not "Will";

b.   █████ identified the photographs of:

i.   Cote as "Steve";

ii.   Minor A as █████████";

iii.   Eric Jenney as Eric Jenney; and

iv.   Pic_98.jpg, first as possibly depicting Jenney and containing a shirt belonging to Jenney, and then as "almost positive" that it is Jenney.[21]

c.   On New Year's Eve 2013-2014:

i.   Steve did not appear to be injured;

---

[20] According to Cote's medical records, Cote did receive medical treatment for a knee injury on or about December 30, 2013. On September 2, 2015, MSP Trooper Matthew Simpson interviewed Cote's aunt, Dorothy Taclof, who stated she stayed home throughout the 2013-2014 New Year's Eve, sitting in her usual chair and watching TV. Taclof said she "kind of fell asleep, in and out," but there was no one else in her house that night except her husband, and she does not remember anyone coming home that night.  Taclof added that while Cote was injured, "he wasn't really laying down or staying off of it, he was walking all over the place with the crutches.  He would even go out in the snow."

[21] When showed a photograph of Singer, █████ did not identify Bruce.

ii.      Bruce was not present; and

iii.     After Steve ██████████ left the shower naked, she began to

provide oral sex to Steve.

d.       According to Steve, Bruce had a ring in New Jersey where fathers used to

share their daughters.

### PROBABLE CAUSE TO BELIEVE THAT THE SUBJECT E-MAIL ACCOUNTS AND THE SUBJECT CELL PHONES CONTAIN EVIDENCE, FRUITS, AND INSTRUMENTALITIES OF THE SUBJECT OFFENSES

67.    I have probable cause to believe that the Subject E-Mail Accounts and the data associated with those accounts contain evidence, fruits, and instrumentalities of the Subject Offenses.

68.    As set forth above, among other things:

a.       Singer's cell phone contacts for "Steve" included Cote's cell phone number and tyrant0807@gmail.com (in the iPhone 4) and tyrant072013@gmail.com (in the iPhone 5).

b.       Singer and Cote exchanged numerous text messages that refer to sexually explicit conduct involving minors and, Cote sent Singer text messages of photographs depicting Minor A.

c.       Cote admitted he used both tyrant0807@gmail.com and tyrant072013@gmail.com.

d.       On May 31, 2015, Singer and Cote exchanged text messages that referenced both a file that Singer sent to tyrant0807@gmail.com and tyrant072013@gmail.com.

e.       On May 31, 2015 at 10:58:59 EDT, Singer sent an e-mail to

41

tyrant0807@gmail.com (*i.e.*, the first Subject E-Mail Account) with the header "Mmm..." the message "Thought you might enjoy her-" and a file entitled "42730978rzh.jpg." This file depicts an approximately fifteen year-old female lying naked on a bed with her finger inserted into her vaginal area. That same day at 14:36:10 EDT, Singer sent an e-mail with the same file, without any header or message, to tyrant072013@gmail.com (*i.e.*, the second Subject E-Mail Account). I believe that these e-mails relates to the text message exchanged between Singer and Cote on May 31, 2015.

f.      On June 18, 2015 at 18:55:03, tyrant072013@gmail.com replied to Singer's May 31, 2015 e-mail and stated, "I can't stop looking at her lol." That same day at 19:18:56, Singer responded, "I understand . . . you must be feeling better!" That same day at 19:20:09, tyrant072013@gmail.com replied, "Never too sick to look at young pussy lol."

g.      On June 26, 2013 at 5:28:59 PM EDT, Singer sent an e-mail to tyrant0807@aim.com, stating "im online if you want to chat. any other pics for me to get hard too lol." Later that day at 5:35 PM EDT, Singer sent another e-mail to tyrant0807@aim.com, stating "I'm here with an electrician . . . won't be back online for a little while. . . meantime, enjoy. and, thanks for letting me 'talk' to [Minor A's nickname]!." On August 13, 2013 at 4:35:31 PM EDT, Singer sent another to e-mail tyrant0807@aim.com, stating "Good, glad to hear everything okay. Working on getting your phone replaced? Let's try and get together before [Minor A's nickname] goes back to school! The hot bath has been wondering where she is...."

42

69.     On September 14, 2015, I sent Google a letter requesting under 18 U.S.C. §
2703(f) that the company preserve records associated with tyrant072013@gmail.com and
tyrant0807@gmail.com for 90 days.

70.     On October 20, 2015, I sent AOL I sent Google a letter requesting under 18
U.S.C. § 2703(f) that the company preserve records associated with tyrant0807@aim.com for 90
days.

71.     I have also probable cause to believe that the Subject Cell Phones contain
evidence, fruits, and instrumentalities of the crimes identified above. As set forth above, among
other things:

> a.      The LG GSM LGL39C Optimus Dynamic II with telephone number (413)
> 271-4075 and MEID 268435461214931706 had a file system named for
> "Steven," which is Cote's first name. Cote used telephone number (413) 271-
> 4075. The phone had contacts for "Bruce" with (201) 370-7384, which belongs
> to Singer's iPhone 5; "Eric" with (413) 519-8078, which belongs to Jenney; and
> "Will" with (413) 562-6526, which belongs to ▮▮▮▮. The phone contained 32
> SMS messages with or pertaining to Singer.

> b.      The LG GSM LGL39C Optimus Dynamic II with MEID
> 268435461213054309 had a file system named for "Kimberly," which is the first
> name of Cote's wife. This phone had numerous SMS text messages with Singer's
> phone(s). Thus, I believe that Cote had access to, and used, this phone in addition
> to his own.

> c.      The Samsung SGH-T340G (GP) with telephone number (413) 427-4075
> and IMEI 355873042240110 had a contact list containing an entry for "Bruce

43

from group" with telephone number (201) 370-7384, which belongs to Singer.

d.      The CSP did not conduct a physical extraction for any of these phones, and thus the CSP was not able to determine whether the phones contained any hidden or deleted data. Thus, a further search of these phones that includes a physical extraction may reveal data that the CSP was not able to locate.

### THE CELLULAR TELEPHONE INFORMATION IS MATERIAL AND RELVANT TO THE GOVERNMENT'S ONGOING INVESTIGATION OF COTE, JENNEY, ▮ SINGER, AND OTHERS

72.     I also have probable cause to believe that the following information about telephone numbers (201) 261-4893 and (201) 370-7384 used by Singer, (413) 271-4075 used by Cote, (413) 519-8078 used by Jenney, and (413) 562-6526 used by ▮ and would be relevant and material to the Government's ongoing investigation of Cote, Jenney, ▮, and Singer, among others:

a.      Names (including subscriber names, user names, and screen names);

b.      Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

c.      Local and long distance telephone connection records;

d.      Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

e.      Length of service (including start date) and types of service utilized; Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"),

Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"));

f.      Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

g.      Means and source of payment for such service (including any credit card or bank account number) and billing records; and

h.      All data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from each cellular telephone or device assigned to the Account, otherwise known as historical cell-site information ("HCSI").

73.     This information is relevant and material to the Government's ongoing investigation because:

a.      Subscriber information and payment information will provide investigators with the names associated with the cellular telephone numbers involved in this investigation.

b.      Toll records and text records will establish whether, and to what extent, the cell phones associated with the telephone numbers were communicating with each other, including during 2013-2014 New Year's Eve.

c.      The HCSI will provide investigators with the location of the suspects' cellular phones during relevant time periods, including during 2013-2014 New Year's Eve and during the times when the subjects sent or received pertinent text messages or emails.

45

### *TECHNICAL BACKGROUND*

74.     In my training and experience and through discussions with other agents, I have learned that e-mail hosting companies, such as Google, maintain computer servers connected to the Internet. Their customers use those computers to send e-mail on the Internet.

75.     Customers can access their accounts on the company's e-mail servers from any computer connected to the Internet.

76.     In addition, Google has storage capacity that allows customers to store opened incoming mail and sent mail indefinitely if they choose, subject to a maximum size limit.

77.     E-mail providers also typically maintain electronic records relating to their customers. These records include account application information, account access information, and e-mail transaction information.

78.     Some e-mail providers, including Google, can also provide the following additional information associated with a subscriber's account: address books; buddy lists; photos, files, data, or other information; and World-Wide Web profiles or homepages.

### *LEGAL AUTHORITY*

79.     The Government may obtain both electronic communications and subscriber information from an e-mail provider by obtaining a search warrant. 18 U.S.C. §§ 2703(a), 2703(c)(1)(A).

80.     Any court with jurisdiction over the offense under investigation may issue a search warrant under 18 U.S.C. § 2703(a), regardless of the location of the website hosting company or e-mail provider whose information will be searched. 18 U.S.C. § 2703(b)(1)(A). Furthermore, unlike other search warrants, Section 2703 warrants do not require an officer to be present for service or execution of the search warrant. 18 U.S.C. § 2703(g).

81.     If the government obtains a search warrant, there is no requirement that either the government or the provider give notice to the subscriber.   18 U.S.C. §§ 2703(b)(1)(A), 2703(c)(3).

### REQUEST TO SEAL AND PRECLUDE NOTICE TO THE SUBSCRIBER(S)

82.     I request that this application, the warrant, the order, and any related papers be sealed by the Court until such time as the Court pursuant to Local Rule 7.2 directs otherwise. I further request that, pursuant to 18 U.S.C. § 2705(b), the Court order Google not to notify any person (including the subscribers or customers to which the materials relate) of the existence of this application, the warrant, or the execution of the warrant unless and until authorized to do so by the Court. Such an order is justified because notification of the application, the warrant, or the execution of the warrant could seriously jeopardize the ongoing investigation by giving the subscriber an opportunity to destroy evidence, notify confederates, or flee from prosecution.

### FOURTEEN-DAY RULE FOR EXECUTION OF WARRANT

83.     Federal Rule of Criminal Procedure 41(e)(2)(A),(B) directs the United States to execute a search warrant for electronic evidence within 14 days (formerly 10 days) of the warrant's issuance. If the Court issues this warrant, the United States will execute it not by entering the premises of Google, as with a conventional warrant, but rather by serving a copy of the warrant on the company and awaiting its production of the requested data. This practice is approved in 18 U.S.C. § 2703(g),[22] and it is generally a prudent one because it minimizes the

---

[22]     Section 2703(g) provides that "[n]otwithstanding section 3105 of this title, the presence of an officer shall not be required for service or execution of a search warrant issued in accordance with this chapter requiring disclosure by a provider of electronic communications service or remote computing service of the contents of communications or records or other information pertaining to a subscriber to or customer of such service."

government's intrusion onto Internet companies' physical premises and the resulting disruption of their business practices.

84.     Based on my training and experience and that of other law enforcement, I understand that e-mail providers sometimes produce data in response to a search warrant outside the 14-day period set forth in Rule 41 for execution of a warrant. I also understand that e-mail providers sometimes produce data that was created or received after this 14-day deadline ("late-created data").

85.     The United States does not ask for this extra data or participate in its production.

86.     Should Google produce late-created data in response to this warrant, I request permission to view all late-created data that was created by Google, including subscriber, IP address, logging, and other transactional data, without a further order of the Court. This information could also be obtained by grand jury subpoena or an order under 18 U.S.C. § 2703(d), neither of which contains a 14-day time limit. However, law enforcement personnel will seek to avoid reviewing any late-created data that was created by or received by the account-holder(s), such as e-mail, absent a follow-up warrant.

87.     For these reasons, I request that the Court approve the procedures in Attachment B, which set forth these limitations.

### *INVESTIGATORS' POSSESSION OF THE SUBJECT CELL PHONES*

88.     The Subject Cell Phones are currently in the possession of the CSP, and will be transferred after the issuance of the requested warrants as soon as possible to the custody of the MSP, where it will be stored at the MSP facilities, as described in Attachment A. The CSP will not release the Subject Cell Phones to the MSP until ordered by the Court. As set forth above, investigators obtained the equipment during the execution of a search warrant at Cote's

residence.  From my training and experience and the training and experience of law enforcement personnel who routinely handle this equipment, I understand that it has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when it first came into the investigators' possession.

89.     Therefore, while the investigators might already have all necessary authority to examine the computer equipment, I seek this additional warrant out of an abundance of caution to be certain that its search will comply with the Fourth Amendment and other applicable laws.

### BACKGROUND ON COMPUTERS AND CHILD PORNOGRAPHY

90.     Computers and digital technology have dramatically changed the way in which individuals interested in child pornography interact with each other.   Computers, including cellular telephones or smartphones, basically serve four functions in connection with child pornography: production, communication, distribution, and storage.

91.     Child pornographers can now transfer printed photographs into a computer-readable format with a device known as a scanner.  Furthermore, with the advent of digital cameras, when the photograph is taken it is saved as a digital file that can be directly transferred to a computer by simply connecting the camera to the computer. In the last ten years, the resolution of pictures taken by digital cameras has increased dramatically, meaning the photos taken with digital cameras have become sharper and crisper.  Photos taken on a digital camera are stored on a removable memory card in the camera.  These memory cards often store up to 32 gigabytes of data, which provides enough space to store thousands of high-resolution photographs.  Video camcorders, which once recorded video onto tapes or mini-CDs, now can save video footage in a digital format directly to a hard drive in the camera. The video files can be easily transferred from the camcorder to a computer.

92.     A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Electronic contact can be made to literally millions of computers around the world. The ability to produce child pornography easily, reproduce it inexpensively, and market it anonymously (through electronic communications) has drastically changed the method of distribution and receipt of child pornography. Child pornography can be transferred via electronic mail or through file transfer protocols (FTPs) to anyone with access to a computer and modem. Because of the proliferation of commercial services that provide electronic mail service, chat services (i.e., "Instant Messaging"), and easy access to the Internet, the computer is a preferred method of distribution and receipt of child pornographic materials.

93.     The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years. These drives can store thousands of images at very high resolution. In addition, there are numerous options available for the storage of computer or digital files. One-Terabyte external and internal hard drives are not uncommon. Other media storage devices include CDs, DVDs, and "thumb," "jump," or "flash" drives, which are very small devices which are plugged into a port on the computer. It is extremely easy for an individual to take a photo with a digital camera, upload that photo to a computer, and then copy it (or any other files on the computer) to any one of those media storage devices (CDs and DVDs are unique in that special software must be used to save or "burn" files onto them). Media storage devices can easily be concealed and carried on an individual's person.

94.     The Internet affords individuals several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.

95.     Individuals also use online resources to retrieve and store child pornography, including services offered by Internet Portals such as Yahoo! and Hotmail, among others. The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer or external media in most cases.

96.     As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes. Storing this information can be intentional, i.e., by saving an e-mail as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files. Digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Such information is often maintained indefinitely until overwritten by other data.

97.     From my training, experience, and information provided to me by other agents, I am aware that individuals frequently use computer equipment, including cellular telephones or smart phones, to carry out, communicate about, and store records regarding their daily activities. These tasks are frequently accomplished through sending and receiving e-mail, instant messages, and other forms of phone or internet based messages; scheduling activities; keeping a calendar of

activities; arranging travel; purchasing items; searching for information including information regarding travel and activities; arranging for travel, accessing personal accounts including banking information; paying for items; and creating and storing images and videos of their movements and activities.

98.     Based on my training, experience, and information provided by other law enforcement officers, I know that many smartphones (which are included in Attachment B's definition of "computer hardware") can now function essentially as small computers. Smartphones have capabilities that include serving as a wireless telephone, digital camera, portable media player, GPS navigation device, sending and receiving text messages and e-mails, and storing a vast range and amount of electronic data. Examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

99.     From my training, experience, and information provided to me by other agents, I am aware that individuals commonly store records of the type described in Attachment B in mobile phones, computer hardware, computer software, and storage media.

100.    Based on my knowledge, training, experience, and information provided to me by other agents, I know that data can often be recovered months or even years after it has been written, downloaded, saved, deleted, or viewed locally or over the Internet. This is true because:

    a.     Electronic files that have been downloaded to a storage medium can be stored for years at little or no cost.  Furthermore, when users replace their electronic equipment, they can easily transfer the data from their old device to a new one.

b.      Even after files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a device, the data contained in the file often does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data, which might not occur for long periods of time. In addition, the device's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.      Wholly apart from user-generated files, electronic storage media often contains electronic evidence of how the device has been used, what it has been used for, and who has used it. This evidence can take the form of operating system configurations, artifacts from operating system or application operation; file system data structures, and virtual memory "swap" or paging files. It is technically possible to delete this information, but users typically do not erase or delete this evidence because special software is typically required for that task.

d.      Similarly, files that have been viewed over the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache." The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are overwritten only as they are replaced with more recently viewed Internet pages or if a user takes steps to delete them.

### *REQUEST FOR SEALING*

101.    It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application, affidavit, search warrants, and Criminal Complaint. I believe that sealing these documents is necessary because the items and information to be seized are relevant to an ongoing investigation

53

into a criminal organization and not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that online criminals actively search for criminal affidavits and search warrants via the Internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness. Further, this affidavit describes a law enforcement technique in sufficient detail that disclosure of this technique could assist others in thwarting its use in the future. Lastly, public disclosure of the Criminal Complaint could cause Cote to flee or destroy evidence.

## *CONCLUSION*

102.    Based on the information described above:

    a.    I have probable cause to believe that  records and data from the Subject E-mail Accounts and the Subject Cell Phones (as described in Attachment A) contain evidence, fruits, and instrumentalities of the Subject Offenses (as described in Attachment B).

    b.    I have reasonable grounds to believe that information pertaining to accounts associated with cellular telephone numbers (413) 271-4075, (413) 519-8078, and (413) 562-6526 are relevant and material to the Government's ongoing criminal investigation of Cote, ███ Jenney, and others.

    c.    On May 31, 2015, Cote committed a violation of Receipt Of Material Involving The Sexual Exploitation Of Minors in violation of 18 U.S.C. § 2252(a)(2). to wit, Cote knowingly received at tyrant072013@gmail.com a file

entitled "42730978rzh.jpg," which depicts an approximately fifteen year-old female lying naked on a bed with her finger inserted into her vaginal area.

103.   The procedures for copying and reviewing the relevant records are set out in Attachment B to the search warrant.

Respectfully submitted,

Corey J. Robinson #171
Detective
Northampton Police Department

Subscribed and sworn to before me on November 19, 2015

KATHERINE A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE

55